NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3346

IN RE APPLICATION OF PHARES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Application of Phares*, Slip Opinion No. 2020-Ohio-3346.]

*Attorneys—Character and fitness—Applications to take bar exam and to register as candidate for admission to practice of law—Failure to disclosure termination of employment for testing positive for marijuana—Pending applications disapproved but application to take July 2022 or a later bar exam permitted.*

(No. 2020-0232—Submitted April 8, 2020—Decided June 18, 2020.)

ON REPORT by the Board of Commissioners on Character and Fitness of the Supreme Court, No. 733.

_____

**Per Curiam.**

{¶ 1} Applicant, Dylan Houston Phares, of Toledo, Ohio, is a 2019 graduate of the University of Toledo College of Law. He applied to register as a

candidate for admission to the practice of law in November 2017 and later submitted an application to take the July 2019 bar exam.

{¶ 2} Phares was interviewed by a two-member panel of the Toledo Bar Association admissions committee in August 2018, and the committee issued a provisional report recommending that his character, fitness, and moral qualifications be approved. The Board of Commissioners on Character and Fitness, however, exercised its authority to investigate his application sua sponte, based on his failure to disclose that his employment with Ohio Link, the operator of a halfway house in Toledo, was terminated in 2016 as a result of his testing positive for marijuana. *See* Gov.Bar R. I(10)(B)(2)(e).

{¶ 3} After receiving testimony at hearings in May and October 2019, a three-member panel of the board issued a report finding that Phares does not currently possess the requisite character and fitness to sit for the Ohio bar exam and recommending that we disapprove his pending applications but permit him to reapply for the July 2022 bar exam. The board unanimously adopted the panel's report and recommendation.

{¶ 4} We adopt the board's findings of fact and disapprove Phares's pending applications. We will permit him to reapply as a candidate for the July 2022 bar exam or a later bar exam.

**Facts**

{¶ 5} In Phares's application to register as a candidate for the July 2019 bar exam, he reported that he had been employed by Ohio Link from March through August 2016 and that he left that employment because he was starting law school. He answered "no" to another question that asked, "Have you ever been terminated, suspended, disciplined, laid off, or permitted to resign in lieu of termination from any job?" In response to an inquiry from the National Conference of Bar Examiners, however, Ohio Link reported that it terminated Phares's employment in August 2016 and that it would not rehire him.

2

{¶ 6} Phares and his Ohio Link supervisor, Beth Miller, offered similar accounts about how the incident that ended his employment began. As an Ohio Link community-reentry specialist, one of Phares's duties was to check on clients who were serving home detention. On Monday, August 8, 2016, Phares had visited a client and was returning to the office in a company vehicle when he was involved in an accident. He called his employer, and Miller drove to the scene and waited with Phares for the police to respond.

{¶ 7} After the police completed their investigation, Phares and Miller returned to the office. During the drive, Miller informed Phares that pursuant to company protocol, he would be required to provide a urine sample for a drug screen; Phares said nothing in response. Upon their arrival at the office, Miller handed Phares a cup that was designed to provide an immediate result and instructed him to provide a urine sample. Again, Phares said nothing. The urine sample that Phares provided tested positive for marijuana. As Miller was about to pour the urine into a second cup to verify the result, Phares told her that the second test would also be positive because he had used marijuana the previous weekend.[1]

{¶ 8} Phares's and Miller's accounts of the incident thereafter diverge. According to Phares, Miller told him that although he had tested positive for marijuana, he could remain employed with Ohio Link provided that he take a substance-abuse course. Phares testified that he told Miller that he was not interested in taking the course because he had already informed Ohio Link that he would be leaving shortly thereafter to start law school and that he was quitting his job that day. He also testified that he never had any further communication with Miller, her supervisor, Ohio Link director Lisa Banks, or anyone else at Ohio

---

1. In his registration application, Phares admitted that while he was in high school, he was charged twice with possession of marijuana. And he testified at his disciplinary hearing that he used marijuana in college and during his first year of law school.

Link. Although the record shows that an Ohio Link human-resources officer mailed Phares a termination letter on August 11, 2016, Phares testified that he did not receive it, perhaps because he had moved or because the letter's mailing address did not identify his apartment number.

{¶ 9} Miller testified, however, that once Phares tested positive for marijuana, she informed him that he would be "on suspension" until further notice. She denied ever having told Phares that he could remain employed if he took a substance-abuse course. Instead, she told him that he would be suspended and that someone at Ohio Link would have to get back to him about what the next steps would be. Miller expressly denied that Phares informed her that he was quitting or that he was not ever coming back to Ohio Link. And in stark contrast to Phares's testimony, Miller testified that he attempted to contact her at least twice later during the week of the accident to ask what was happening and whether she had heard anything about his suspension.

{¶ 10} Banks testified that during the week of the accident, she had two telephone conversations with Phares and that he questioned the validity of Ohio Link's drug-testing protocol. During one of those conversations, Phares told Banks that he would be coming in to speak with her—but he never met with her or responded to the numerous messages she left for him. According to Banks, Phares never informed her that he had quit and someone from Ohio Link's human-resources department eventually informed her that Phares had been terminated.

{¶ 11} Based on Miller's and Banks's testimony, the board concluded that Phares was suspended from his job on the day of his accident and later terminated based on his failed drug test. Although the board acknowledged that Phares may not have taken affirmative steps to remain at Ohio Link because he was going to start law school in just a few weeks, it found that his registration application "gross[ly] mischaracteriz[ed]" what actually transpired. Phares then compounded

the problem by giving false testimony to the panel at both of his admissions hearings. Indeed, the board found that Phares made the conscious decision to maintain that he had quit his job and that he had not initiated or engaged in any contact with anyone at Ohio Link since the day of his accident—despite Miller's and Banks's independent testimony to the contrary.

**Disposition**

{¶ 12} An applicant for admission to the Ohio bar bears the burden of proving "by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). An applicant may be approved for admission if the applicant satisfies the essential eligibility requirements for the practice of law as defined by the board and demonstrates that "the applicant's record of conduct justifies the trust of clients, adversaries, courts, and others." Gov.Bar R. I(11)(D)(3). "A record manifesting a significant deficiency in the honesty, trustworthiness, diligence, or reliability of an applicant may constitute a basis for disapproval." *Id.* The failure to provide complete and accurate information and the making of false statements may likewise warrant disapproval. Gov.Bar R. I(11)(D)(3)(g) and (h).

{¶ 13} Here, Phares engaged in a pattern of dishonesty that began with his omission of potentially damaging information in his November 2017 registration application and his certification that he had answered all the questions in the application "fully and frankly." Phares's pattern of dishonesty culminated with his giving false testimony under oath at his admissions hearings in May and October 2019—after he had graduated from law school. On these facts, we agree with the board's finding that Phares has failed to carry his burden of proving by clear and convincing evidence that he currently possesses the requisite character, fitness, and moral qualifications to practice law in Ohio.

**{¶ 14}** Accordingly, Dylan Houston Phares's pending applications are disapproved. He may apply to take the July 2022 or a later bar exam provided that he submits a new application to register as a candidate for admission to the practice of law in accordance with Gov.Bar R. I(2) and is able to establish that he has the requisite character, fitness, and other qualifications.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., would permit applicant to apply to take the July 2021 bar exam.

_____

Darrow Law, L.L.C., and Thomas I. Darrow, for applicant.

Keithley B. Sparrow, for the Toledo Bar Association.

_____